IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| B.D.S., AN INCAPACITATED | § | |
| PERSON b/n/f SHERRILL MICHELLE | § | |
| SMITH AND  TIM WAYNE SMITH | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. 2:10-cv-284 |
| | § | |
| CLARENDON INDEPENDENT | § | |
| SCHOOL DISTRICT by and through | § | |
| MONTY HYSINGER, | § | |
| SUPERINTENDENT, IN HIS OFFICIAL | § | |
| CAPACITY and WAYNE HARDIN , | § | |
| PRESIDENT OF THE CLARENDON | § | |
| INDEPENDENT SCHOOL DISTRICT, | § | |
| IN HIS OFFICIAL CAPACITY | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED COMPLAINT AND BRIEF IN SUPPORT THEREOF**

Respectfully submitted,

Slater C. Elza
State Bar No. 24000747
Slater.Elza@uwlaw.com
Andrea Slater Gulley
State Bar No. 24045994
Andrea.Gulley@uwlaw.com
Underwood, Wilson, Berry,
Stein & Johnson, P.C.
P.O. Box 9158
Amarillo, Texas 79105-0158
Telephone:  (806) 376-5613
Fax:  (806) 349-9474

**ATTORNEYS FOR DEFENDANTS**

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

BACKGROUND ............................................................................................................... 1

RELIEF REQUESTED...................................................................................................... 2

BRIEF IN SUPPORT ........................................................................................................ 3

      A. Dismissal for Lack of Subject Matter Jurisdiction under Federal Rule of
Civil Procedure 12(b)(1) .............................................................................3

           Exhaustion of Remedies ........................................................................ 5

           Exhaustion of Remedies not Excused..................................................... 10

           Sovereign Immunity on State Contract Claims ........................................ 13

      B. Dismissal for Failure to State a Claim under Federal Rule of Civil
Procedure 12(b)(6) ...................................................................................15

           Incorporation of Prior Section ................................................................ 15

           Legal Standard ...................................................................................... 15

           State Created Danger Claim Must be Dismissed...................................... 17

           § 1983 Claim Must be Dismissed ........................................................... 18

           Official Capacity Claims Must be Dismissed........................................... 19

           Respondeat Superior Claim .................................................................... 20

           Title IX Claim ....................................................................................... 21

           Individual Claims by Parents .................................................................. 24

      C. Dismissal for Failure to Meet General Pleading Requirements.................24

PRAYER.......................................................................................................................... 26

CERTIFICATE OF SERVICE ........................................................................................ 27

# TABLE OF AUTHORITIES

**Cases**

*A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 802 (3d Cir. 2007) ....................................... 8

*Adolph v. FEMA*, 854 F.2d 732 (5th Cir. 1988) ................................................................ 15

*Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*, 988 F.2d 1157 (Fed. Cir. 1993) ............................................................................................................................. 15

*Ass'n for Cmty. Living in Colo v. Romer*, 992 F.2d 1040, 1044 .......................................... 6

*Bd. Of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 407 (1997) ... 19

*Begala v. PNC Bank*, 214 F.3d 776 (6th Cir. 2000) .................................................... 16, 24

*Bills by Bills v. Hommer Consolidated School District*, 959 F. Supp. 507 (N.D. Ill. 1997) ................................................................................................................................ 6

*Blackburn v. City of Marshall*, 42 F.3d 92 (5th Cir. 1995) ................................... 15, 16, 24

*Charlie F. v. Bd. of Educ. of Skokie Sch. Dist.* .......................................................... 10, 11

*City of LaPorte v. Barfield*, 898 S.W.2d 288, 291 (Tex. 1995) ........................................ 13

*Conley v. Gibson*, 355 U.S. 41 (1957) ............................................................................. 15

*D.A. v. Houston Indp. Sch. Dist.,* 2010 WL 5302187 *5 (5th Cir., Dec. 28, 2010) ............. 8

*Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999) ................... 21, 22, 23

*Doe v. Alfred*, 906 F. Supp. 1092 (S.D.W. Va. 1995) ....................................................... 6

*Eason v. Saylor*, 73 F.3d 1322 (5th Cir. 1996) ............................................................... 20

*Elliott v. Foufas*, 867 F.2d 877 (5th Cir. 1989) ............................................................... 16

*Espinoza v. Missouri-Pacific Ry. Co.*, 754 F.2d 1247 (5th Cir. 1985) ............................. 16

*Federal Sign v. Tex. S. Univ.* .................................................................................... 13, 14

*Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 59 (1st Cir. 2002) .......................... passim

*Guidry v. Bank of LaPlace*, 954 F.2d 278 (5th Cir. 1992) ............................................... 16

*Honig v. Doe,* 484 U.S. 305 (1988) ............................................................ 5, 10

*Hooker v. Dallas Indep. Sch. Dist.,* 2010 WL 4025877 *6 (N.D. Tex. 2010) .................. 5

*Howery v. Allstate Ins. Co.*, 243 F.3d 912 (5th Cir. 2001) .................................. 4

*Kentucky v. Graham*, 473 U.S. 159 (1985) .................................................. 20

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993) .............................................................................. 25

*Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999) ........................................ 8

*Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242 (5th Cir. 1997) ........................... 16

*M.T.V. v. DeKalb County Sch. Dist.*, 446 F.3d 1153, 1158 (11th Cir. 2006) .................. 6

*MDPhysicians & Assoc., Inc. v. State Bd. of Ins.,* 957 F.2d 178 (5th Cir.1992) .............. 4

*Monell v. Dept. of Social Services*, 436 U.S. 658 (1978) ................................... 20

*Morin v. Moore,* 309 F.3d 316, 321 (5th Cir. 2002) ...................................... 17

*N.B. by D.G. v. Alachua Co. Sch. Board*, 84 F.3d 1376 (11th Cir. 1996) ............... 7, 12

*Neitzke v. Williams*, 490 U.S. 319 (1989) ................................................. 15

*Oliver v. Scott,* 276 F.3d 736, 741 (5th Cir. 2002 ........................................ 25

*P. Gioioso & Sons, Inc. v. OSHRC*, 115 F.3d 100, 104 (1st Cir. 1997) .................... 7

*Paterson v. Weinberger,* 644 F.2d 521(5th Cir. 1981) ...................................... 4

*Payne v. Peninsula School District*, 598 F.3d 1123 (9th Cir. 2010) ................... 12, 13

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) .................................. 19

*Pihl v. Mass. Dep't of Educ.*, 9 F.3d 184, 188-89 (1st Cir. 1993) ....................... 12

*Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) ....................... 19

*Rivera v. Houston Ind. Sch. Dist.*, 349 F.3d 244, 248 (5th Cir. 2003) ................... 19

*Rose v. Yeaw*, 214 F.3d 206, 210 (1st Cir. 2000) ........................................ 5

*Sanez v. City of McAllen,* 2010 WL 3852358 (C.A.5 (Tex ................................... 17

*Skeen v. Comal Indep. Sch. Dist.*, 2008 WL 1930306 (W.D. Tex. 2008, not reported) .. 17, 18

*Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997) ...................................... 19

*Stockman v. Fed. Election Comm'n*,  138 F.3d 144 (5th Cir. 1998)................................... 4

*Student v. Beeville Indep. Sch. Dist.*, TEA Docket No. 009-SE-0908 (Oct. 5, 2009) ........ 9

*Student v. El Paso Indep. Sch. Dist.*, TEA Docket No. 010-SE-0906 (Dec. 12, 2006) ...... 9

*Univ. of Tex. Med. Branch v. York*, 871 S.W.2d 175, 177 (Tex. 1994) ........................... 13

*Walker v. Livingston,* 381 Fed. Appx. 477, 479-80 (5th Cir. 2010)(unpublished) ........... 17

*Weber v. Cranston Sch. Comm.*, 212 F.3d 41, 53 (1st Cir. 2000) ...................................... 6

*Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.1981) ................................................... 4

## Statutes and Other Authorities

20 U.S.C. § 1415(b)(6)(A) .................................................................................................. 5

20 U.S.C. § 1415(l) ............................................................................................................. 5

20 U.S.C. § 1415(f) ............................................................................................................. 6

20 U.S.C. § 1415(i)(2) ........................................................................................................ 6

20 U.S.C. § 1415(i)(2)(B) ................................................................................................... 6

29 U.S.C.A. § 791 ............................................................................................................... 5

42 U.S.C. § 1983 ............................................................................................................... 18

42 U.S.C.A. § 12101 ........................................................................................................... 5

Fed. R. Civ. P. 12(b)(1) ................................................................................................ 2, 3, 4

Fed. R. Civ. P. 12(b)(6) ............................................................................................... passim

Fed. R. Civ. P. 8(a) ....................................................................................................... 3, 25

House Bill 2039 ................................................................................................................ 14

Individuals with Disabilities Education Act ............................................................... passim

Tex. Educ. Code § 11.151 ................................................................................... 19

Tex. Local Gov't Code § 271.151(2) ................................................................. 14

Tex. Local Gov't Code § 271.156 ...................................................................... 15

TO THE HONORABLE UNITED STATED DISTRICT JUDGE:

COME NOW DEFENDANTS, Clarendon Independent School District ("CISD"), Monty Hysinger ("Hysinger") and Wayne Hardin ("Hardin") (collectively, "Defendants") and file this, their Motion to Dismiss Plaintiffs' First Amended Complaint ("Amended Complaint"), and in support thereof would respectfully show the Court as follows:

## I.   BACKGROUND

1.      Plaintiff's daughter, Brandy Smith ("B.D.S."), was enrolled as a special education student at CISD, beginning in the 2005-2006 school year.

2.      During the 2006-2007 school year, Plaintiff Tim Smith, acting as best friend for his daughter, filed a request with the Texas Education Agency for a due process hearing concerning his daughter's education at CISD.  (*See* Amended Complaint at ¶ 49). Effective December 19, 2007, Plaintiff Tim Smith, individually and as next friend of his daughter, entered into a Settlement Agreement with CISD that resolved all claims up to and including December 19, 2007.  (*See* Amended Complaint at ¶ 49).

3.      On August 6, 2008, Plaintiff Tim Smith, acting as best friend for his daughter, filed a second request for a due process hearing concerning his daughter's education at CISD with two specific issues:  (a) whether his daughter has a form of Autism/Pervasive Developmental Disorder/Not Otherwise Specified  and (b) whether his daughter should receive direct speech therapy.  The due process hearing convened on October 1 and 2, 2008.

4.      On December 1, 2008, the Due Process Hearing Officer ruled against the Plaintiff and his daughter and in favor CISD on all issues alleged by Plaintiff Tim Smith and his daughter.

5.      On January 11, 2010, Plaintiff Tim Smith filed a lawsuit against Defendant CISD and CISD Principal Larry Jeffers, which was served on February 3, 2010.   This lawsuit claimed that the Defendants retaliated against Tim Smith for engaging in protected activities relating to his daughter's attendance at CISD in violation of the Federal Rehabilitation Act and the Americans with Disabilities Act.   Plaintiff dismissed this matter shortly before trial.

6.      On June 24, 2010, CISD received notice that Plaintiff Tim Smith filed a Civil Rights Complaint with the Department of Education, Office of Civil Rights ("OCR") claiming CISD and its employees had discriminated against B.D.S.   The OCR found no evidence to substantiate Mr. Smith's allegations.

7.      On December 7, 2011, Plaintiffs filed the current lawsuit, alleging claims under the IDEA, Rehabilitation Act, Title IX, and § 1983, and alleging State Created Danger and Breach of Contract claims.

8.      Plaintiffs have not availed themselves of the administrative process afforded under the IDEA through the Texas Education Agency by filing a request for a special education due process hearing in regards to any of the claims set forth in their Amended Complaint.

## II.  RELIEF REQUESTED

9.      Defendants request that this Court grant this Motion to Dismiss for Lack of Subject Matter Jurisdiction, as authorized by Fed. R. Civ. P. 12(b)(1), along with all costs of court, including attorney's fees, and for such other and further relief, be it equitable or legal, to which Defendants may be justly entitled.

10.     In the alternative, Defendants request that the Court grant this Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted, as authorized by Fed. R. Civ. P. 12(b)(6) along with all costs of court, including attorney's fees, and for such other and further relief, be it equitable or legal, to which Defendants may be justly entitled.

11.     In the alternative, Defendants request that the Court grant this Motion to Dismiss because Defendants maintain sovereign immunity from suit for state law contractual claims along with all costs of court, including attorney's fees, and for such other and further relief, be it equitable or legal, to which Defendants may be justly entitled.

12.     In the alternative, Defendants request that the Court grant this Motion to Dismiss for failure to meet the pleading requirements of Fed. R. Civ. P. 8(a), along with all costs of court, including attorney's fees, and for such other and further relief, be it equitable or legal, to which Defendants may be justly entitled.

13.     In the alternative, Defendants Hysinger and Hardin request that the Court grant this Motion to Dismiss because such Defendants are sued only in their official capacity, and any such claims are duplicative of the claims against CISD, along with all costs of court, including attorney's fees, and for such other and further relief, be it equitable or legal, to which Defendants may be justly entitled.

### III.  BRIEF IN SUPPORT

**A.      Dismissal for Lack of Subject Matter Jurisdiction under Federal Rule of Civil Procedure 12(b)(1)**

14.     Defendants ask the Court to dismiss Plaintiffs' suit, as authorized by Fed. R. Civ. P. 12(b)(1), because this Court does not have subject matter jurisdiction over the

matters set forth in Plaintiff's First Amended Complaint.  All legal claims asserted by Plaintiffs in their Amended Complaint rely on the same facts as set forth in the Amended Complaint at ¶¶ 18-91.  (*See* Plaintiffs' First Amended Complaint at ¶¶ 18, 92, 96, 104, 107, 109, 113, 115, 118, 126, 128, 131, 133, and 135).  There are no factual assertions or legal claims not related to B.D.S.'s education and educational placement at CISD.

15.     In ruling on a motion to dismiss for lack of subject matter jurisdiction, "a trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *MD Physicians & Assoc., Inc. v. State Bd. of Ins.,* 957 F.2d 178, 181 (5th Cir.1992) (*citing Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir. 1981)).  "Federal Courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n,* 138 F.3d 144, 151 (5th Cir. 1998).   The court "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).  If subject matter jurisdiction is lacking, the court must dismiss the suit.  *See Stockman*, 138 F.3d at 151.

16.     The defendant either makes a "facial" or "factual" jurisdictional attack on a plaintiff's complaint. *Paterson v. Weinberger,* 644 F.2d 521, 523 (5th Cir. 1981). In order to make a "facial" jurisdictional attack, the defendant merely files a motion under Fed. R. Civ. P. 12(b)(1) challenging the court's jurisdiction. *Id.* Once complete, the court simply assesses the sufficiency of the allegations contained in the plaintiff's complaint, which are presumed to be true. *Id.*

17.    The exhaustion of remedies requirement found in the Individuals with Disabilities Education Act ("IDEA") is jurisdictional.  *Hooker v. Dallas Indep. Sch. Dist.,* 2010 WL 4025877 *6 (N.D. Tex. 2010).

**Exhaustion of Remedies**

18.    In all causes of action set forth in the Amended Complaint, Plaintiffs claim CISD acted wrongfully related to the education and educational placement provided B.D.S. by CISD.  However, Plaintiffs have failed to exhaust their administrative remedies as they pertain to any of their claims.   The IDEA states:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], Title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, *except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.*

20 U.S.C. § 1415(l) (emphasis added).   Further, the IDEA provides relief for "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."    20 U.S.C. §1415(b)(6)(A).  "This requirement is not limited to claims based directly upon violations of the IDEA."  *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 59 (1st Cir. 2002).  Rather, the exhaustion requirement "applies even when the suit is brought pursuant to a different statute so long as the party is seeking relief that is available under subchapter II of IDEA."  *Id.* (*citing Rose v. Yeaw*, 214 F.3d 206, 210 (1st Cir. 2000)).  A party who seeks to invoke an exemption to the exhaustion requirement bears the burden of showing that it applies.  *Id. (citing Honig v. Doe,* 484 U.S. 305, 326-27 (1988)).

19.     The purposes behind requiring the exhaustion of administrative remedies include "(1) to permit an agency to exercise its discretion and expertise; (2) to develop technical issues and a factual record prior to judicial review; (3) to prevent circumvention of agency procedures; and (4) to avoid unnecessary judicial review by allowing agencies to correct errors." *Bills by Bills v. Hommer Consolidated School District*, 959 F. Supp. 507, 511 (N.D. Ill. 1997)(*citing Doe v. Alfred*, 906 F. Supp. 1092, 1097 (S.D.W. Va. 1995)).  This procedure begins with an administrative hearing, otherwise known as a due process hearing or local hearing.  20 U.S.C. § 1415(f).  Once a hearing is completed, any party aggrieved by the decision may appeal by initiating a civil action in federal court.  20 U.S.C. § 1415(i)(2).  On appeal, the federal court must receive and review the administrative record, hear additional evidence if requested, and grant relief as appropriate based on a preponderance of the evidence.  20 U.S.C. § 1415(i)(2)(B).

20.     The "IDEA's mandate is explicit: plaintiffs must exhaust [the Act's] impartial due process hearing procedures in order to bring a civil action . . ." *Weber v. Cranston Sch. Comm.*, 212 F.3d 41, 53 (1st Cir. 2000).  This prevents a plaintiff from deliberately circumventing and disregarding the established state procedures, and serves the interests of judicial economy by allowing the state educational agency an initial opportunity to correct any error.  *Ass'n for Cmty. Living in Colo v. Romer*, 992 F.2d 1040, 1044.  "The philosophy of the IDEA is that plaintiffs are required to utilize the elaborate administrative scheme established by the IDEA before resorting to the courts to challenge the actions of the local school authorities."  *M.T.V. v. DeKalb County Sch. Dist.*, 446 F.3d 1153, 1158 (11th Cir. 2006) (*citing N.B. by D.G. v. Alachua Co. Sch.*

*Board*, 84 F.3d 1376, 1378 (11th Cir. 1996))[1].  Courts do not differentiate between the parent's claims and student claims.  *M.T.V.,* 446 F.3d at 1158.

21.     The Exhaustion requirement applies equally to § 1983 claims.  A plaintiff who seeks only money damages is required to exhaust administrative remedies before instituting a § 1983 claim predicated on a violation of the IDEA.  *Frazier v. Fairhaven*, 276 F.3d 52, 60-63 (1st Cir. 2002).

22.     This requirement is more than a matter of form.  Insisting on exhaustion forces parties to take administrative proceedings seriously, allows administrative agencies an opportunity to correct their own errors, and potentially avoids the need for judicial involvement altogether.  *Id.* (*citing P. Gioioso & Sons, Inc. v. OSHRC*, 115 F.3d 100, 104 (1st Cir. 1997)).

23.     According to the First Circuit, "[t]he IDEA fits comfortably into this general pattern.  Congress constructed the law on the premise that plaintiffs would be 'required to utilize the elaborate administrative scheme established by the [IDEA] before resorting to the courts to challenge the actions of local school authorities." *Id. (citing N.B. v. Alachua County Sch. Bd.,* 84 F.3d 1376, 1378 (11th Cir. 1996)(per curiam)).  Ultimately, the *Frazier* court held that a plaintiff who brings an IDEA-based claim under § 1983, in which they seek only money damages, must exhaust the administrative process available under the IDEA as a condition precedent to entering a state or federal court.  *Id.* at 64.

24.     The Fifth Circuit has likewise ruled that a plaintiff must exhaust the IDEA's administrative remedies prior to bringing suit under § 1983.  "Where a statutory

---

[1] Like the Plaintiffs in this case, the M.T.V. plaintiffs also alleged claims under the Rehabilitation Act and the Americans with Disabilities Act, which were dismissed for failure to exhaust administrative remedies.

regime already provides a comprehensive set of remedies for its enforcement, there is a presumption against the availability of the more general remedial measures of § 1983." *D.A. v. Houston Indp. Sch. Dist.,* 2010 WL 5302187 *5 (5th Cir., Dec. 28, 2010)(*citing Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999)).   Noting its agreement with other circuits that ruled on the issue, the Court determined, "the comprehensive enforcement scheme established for IDEA violations justifies the presumption that it is meant to be exclusive absent congressional intent to create additional remedies." *Id*. "Nothing in § 1415(*l*) indicates an intent to facilitate the expansive remedies under § 1983 in addition to IDEA's carefully calibrated mechanism to prevent or remedy violations." *Id. (citing A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 802 (3d Cir. 2007)).   Accordingly, the plaintiff could not assert an IDEA based claim through § 1983.

25.   In the present case, if one carefully reads the assertions in Plaintiffs' § 1983, Americans with Disabilities Act, and Rehabilitation Act claims, Plaintiff B.D.S. is asserting claims that she was injured because her educational placement was in a classroom with another student who she claims sexually assaulted or harassed her, and that the Defendant's employees did not utilize proper discipline or restraint techniques. (*See*, *e.g.*, Amended Complaint at ¶¶ 54, 60, 64, 66, 68.)   There are no assertions or claims ***not*** related to B.D.S.'s education or educational placement.

26.   Plaintiffs' real complaint is that B.D.S. was present in an allegedly unsafe educational placement. (*See*, for example, Amended Complaint ¶ 68, "On February 5th, the Smith's e-mailed Jeffers and told him they ***would be seeking an alternative placement*** for B.D.S. because of the school's failure to investigate the sexual harassment.")   The IDEA and related cases are clear that educational placement is

precisely the type of issue for which a hearing officer could offer relief – *e.g.*, by ordering CISD to change B.D.S.'s educational placement, by ordering compensatory services for B.D.S. for any alleged educational harm that may have occurred due to her placement, by ordering counseling to help B.D.S. deal with the alleged psychological harms that she endured, etc. *See Student v. Beeville Indep. Sch. Dist.*, TEA Docket No. 009-SE-0908 (Oct. 5, 2009) (Independent Hearing Officer awarding compensatory educational services and "appropriate services and/or facilities to meet the Petitioner's educational needs and right to a FAPE."); *Student v. El Paso Indep. Sch. Dist.*, TEA Docket No. 010-SE-0906 (Dec. 12, 2006) (Independent Hearing Officer awarding Compensatory Speech Services).

27.     Despite B.D.S.'s education and educational placement clearly being the issue of which Plaintiffs complain, and despite a hearing officer clearly having the authority to order relief for such issues, Plaintiffs chose not to allege these issues in due process proceedings.   Accordingly, Plaintiffs failed to exhaust their administrative remedies relating to the educational placement of B.D.S. while at CISD.   Because Plaintiffs failed to exhaust their administrative remedies as to these claims, the court lacks jurisdiction and the claims must be dismissed.

28.     Notably, Plaintiffs' concede that they have not exhausted their administrative remedies for their claims raised in the current lawsuit.   (*See* Amended Complaint at ¶ 13.)   Because it is clear that Plaintiffs' claims are related to B.D.S.'s education at CISD, the question necessarily becomes whether Plaintiffs were otherwise excused from exhausting their administrative remedies.  *See M.T.V.,* 446 F.3d at 1159.

29.     If exhaustion has not occurred, Plaintiffs can only circumvent the exhaustion requirement where recourse to IDEA's administrative proceedings would be

futile or inadequate.   *Honig v. Doe,* 484 U.S. 305, 327 (1988).   The burden of demonstrating such excuse lies with the Plaintiff.  Plaintiffs have failed to plead any facts that would illustrate that use of the administrative proceedings regarding their claims would have been "futile or inadequate."  *See Id.*

**Exhaustion of Remedies not Excused**

30.     In their Amended Complaint, Plaintiffs allege "there is no need for administration exhaustion in this cause" because they "only seek pecuniary damages in this lawsuit, which is not the type of relief a 'Texas Education Agency Administrative Law Judge' could provide".  (*See* Amended Complaint at ¶ 13.)  It is worth noting that while Plaintiffs seek to avoid their duty to exhaust their administrative remedies by stating they are seeking ***only*** pecuniary damages, they in fact seek non-pecuniary damages in asking the Court to direct CISD "to take any and all other specific actions required by any and all of the statutes noted" in their Amended Complaint – the very types of remedies that could have been afforded in a due process hearing.  (*See* Amended Complaint at ¶ 142(i).)  Plaintiffs also claim that "administrative exhaustion" would be futile since B.D.S. is no longer a student of the CISD.  (*See* Amended Complaint at ¶ 14.)  Established law does not support the position advanced by Plaintiffs.

31.     *Charlie F. v. Bd. of Educ. of Skokie Sch. Dist.* supports Defendants' position that Plaintiffs were required to exhaust their administrative remedies under the IDEA.  98 F.3d 989, 991 (7th Cir. 1996).  The *Charlie F.* plaintiff argued that he was not required to exhaust administrative remedies because he, like the Plaintiffs herein, sought only monetary relief, a remedy not available under the IDEA.  *Id.* at 992.  The Seventh Circuit rejected this argument, noting "[t]he nature of the claim and the governing law

determine the relief no matter what the plaintiff demands.  If this principal is equally applicable for purposes of the [IDEA], then the theory behind the grievance may activate the IDEA's process, even if the plaintiff wants a form of relief that the IDEA does not supply."  *Id.*  The court noted that parents cannot ignore remedies under the IDEA and insist on those of their own devising.  Parents cannot opt out of the IDEA by making an unreasonable or unattainable demands.  *Id.*

32.     Educational professionals and hearing officers who evaluate claims under the IDEA may conclude (a) that adequate remedial services can be provided, or (b) that the child does not today require services.  *Id.*  The first outcome would show that relief is available under the IDEA; the second would provide information relevant to the student's claims under statutes other than the IDEA.  In either event, pursuit of the administrative process would be justified.  *Id.*  "We read 'relief available' to mean relief for the events, condition, or consequences of which the person complains, not necessarily relief of the kind the person prefers."  *Id.*

33.     Plaintiffs' Amended Complaint does not address the fact that non-pecuniary remedies or changes would have been available had they timely filed for an administrative hearing on claims related to B.D.S.'s education and educational placement at CISD, but instead argue that they are entitled to pursue a civil litigation in federal court because they withdrew B.D.S. from school.  (*See* Amended Complaint at ¶ 14.)  Plaintiffs appear to claim that by withdrawing their daughter from CISD, the IDEA exhaustion requirements no longer apply.  Again, the law does not support Plaintiffs' position.

34.     In *Frazier v. Fairhaven School Comm*, 276 F.3d 52 (1st Cir. 2002), the plaintiffs argued that exhaustion was futile where their daughter had graduated from high

school prior to filing of the suit, arguing that there was nothing the administrative process could do "to ameliorate the bungling that marred her educational experience." *Id.* at 63. However, the Court correctly noted that even after graduation, compensatory education is an available remedy. *Id.* (*citing Pihl v. Mass. Dep't of Educ.*, 9 F.3d 184, 188-89 (1st Cir. 1993)). This position is reinforced in 20 U.S.C. 1401(26), through the definition of related services:

> The term "related services" means transportation, and such developmental, corrective, and other supportive services (including speech-language pathology and audiology services, interpreting services, psychological services, physical and occupational therapy, recreation, including therapeutic recreation, social work services, school nurse services designed to enable a child with a disability to receive a free appropriate public education as described in the individualized education program of the child, counseling services, including rehabilitation counseling, orientation and mobility services, and medical services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a child with a disability to benefit from special education, and includes the early identification and assessment of disabling conditions in children.

There can be little doubt that Plaintiffs' complaints, if determined to have been valid, could have been remedied through new, different or additional academic, psychological and therapeutic corrective and supportive services provided by CISD or through contract service providers. *See, Id.*

35.     Similarly, the plaintiffs in *Payne v. Peninsula School District*, 598 F.3d 1123 (9th Cir. 2010) argued that exhaustion would be futile because the child was no longer in the school district, but was being home-schooled. Citing *N.B. v. Alachua County Sch. Bd.*, 84 F.3d 1376, 1379 (11th Cir. 1996), the *Payne* court noted that the removal of a child from the school district does not waive the exhaustion of remedies

requirement.  *Id.*  Further, just because the plaintiffs desire a different remedy "does not decide the question."  *Id.*

36.     Further, and of equal importance, "the entire matter of timing is largely within a plaintiff's control.  The IDEA provides a comprehensive remedial scheme, and the plaintiffs could have invoked it at any of several different points during [the student's] high school years.  It would be a hollow gesture to say that exhaustion is required-and then to say that plaintiffs, by holding back until the affected child graduates, can evade the requirement."  *Frazier,* 276 F.3d at 63.  This would simply encourage plaintiffs to wait until graduation before bringing monetary damage claims, and avoid the administrative process.  The faulty logic proposed by the Smith Family as it relates to B.D.S. transferring school districts is certainly analogous.  Plaintiffs have not met the burden of providing evidence or legal authority that they are excused from compliance with the IDEA and their claims must be dismissed for lack of jurisdiction.

***Sovereign Immunity on State Contract Claims***

37.     This Court lacks jurisdiction over Plaintiffs' state law breach of contract claims, as CISD is entitled to sovereign immunity.  Plaintiffs have not alleged or asserted facts to support a position that sovereign immunity has been waived by or on behalf of CISD.

38.     The Texas Supreme Court has consistently held that it will not find that a statute waives sovereign immunity unless there is legislation providing a clear and unambiguous expression of the legislature's intent.  *City of LaPorte v. Barfield*, 898 S.W.2d 288, 291 (Tex. 1995); *Univ. of Tex. Med. Branch v. York*, 871 S.W.2d 175, 177 (Tex. 1994).  In *Federal Sign v. Tex. S. Univ.*, the Texas Supreme Court restated the well

established rule of law that when a political subdivision of the State enters into a contract with a private entity, it waives its immunity from liability, but not suit, with respect to any breach of contract claim.  951 S.W.2d 401, 408-09 (Tex. 1997).  Following *Federal Sign*, it appears that a waiver of immunity from suit may be established in one of three ways:

1)      a specific legislative grant of permission to sue in a specific case;
2)      a statute, including enabling legislation, that then establishes a waiver of immunity from suit; or
3)      conduct beyond the mere execution of the contract that constitutes a waiver of immunity from suit.

*Id.* at 412.  The Plaintiffs in the current matter have not alleged that sovereign immunity has been so waived.

39.     Following many years of disagreement as to whether school districts and other local government units were subject to suit for breach of contract, the 2005 Legislature passed House Bill 2039 which amended Chapter 271 of the Texas Local Government Code and authorized suits against cities, school districts, junior college districts and special purpose districts in certain instances.  Specifically, Chapter 271 waived immunity for breach of contract claims against school districts for written contracts where goods and services were provided to the local government entity.  Tex. Local Gov't Code § 271.151(2).  Plaintiffs have not alleged that they entered into a written contract for providing goods or services to CISD.

40.     Further, Subchapter I defines "adjudication" of a contract claim against a school district to mean "the bringing of a civil suit and prosecution to final judgment in county or state court . . . ."  *Id.* at 271.151(1).  Since Plaintiffs brought this breach of contract claim in Federal Court, there can be no waiver of immunity from suit.  Finally,

and similarly, Tex. Local Gov't Code § 271.156 specifically states that "[t]his subchapter does not waive sovereign immunity to suit in federal court." Accordingly, this Court does not have jurisdiction over the State contract claim.

**B.     Dismissal for Failure to State a Claim under Federal Rule of Civil Procedure 12(b)(6)**

## Incorporation of Prior Section

Each of the dismissal grounds and arguments set forth in A. above also serve as a basis for dismissal under Fed. R. Civ. P. 12(b)(6) and such arguments and authorities are incorporated herein.

*Legal Standard*

41.     A court may dismiss a claim under Fed. R. Civ. P. 12(b)(6) if "it appears to a certainty that no relief can be granted under any set of facts provable in support of its allegations or if the allegations, accepted as true, do not present a claim upon which relief legally can be obtained." *Adolph v. FEMA*, 854 F.2d 732, 735 (5th Cir. 1988); *see Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).   Under Fed. R. Civ. P. 12(b)(6), dismissal is proper if the complaint lacks an allegation concerning a required element necessary to obtain relief.  *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).  Fed. R. Civ. P. 12(b)(6) allows courts to "eliminate actions which are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity."  *Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993) (*citing Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)).  To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain either a direct or inferential allegation respecting all the material elements to sustain a recovery under some viable legal theory; more than bare assertions of legal

conclusions are required to satisfy federal notice pleading requirements. *Begala v. PNC Bank*, 214 F.3d 776, 779 (6th Cir. 2000).

42.     In considering Fed. R. Civ. P. 12(b)(6) motions, courts accept only well-pleaded allegations of fact as true and may rely upon matters outside the pleadings for which there exists no genuine issues of fact. *See Espinoza v. Missouri-Pacific Ry. Co.*, 754 F.2d 1247, 1248 n. 1 (5th Cir. 1985). In ruling on a Fed. R. Civ. P. 12(b)(6) motion, the well-pleaded allegations of the complaint must be taken as true. *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 251 n. 13 (5th Cir. 1997). But, the plaintiff must allege specific facts, not mere conclusory allegations. *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989). Conclusory allegations and unwarranted deductions of fact are not admitted as true. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).

43.     Further, under Fed. R. Civ. P. 12(b)(6), dismissal is proper if the complaint lacks an allegation concerning a required element necessary to obtain relief. *See Blackburn,* 42 F.3d at 931. Because Plaintiffs' Amended Complaint does not allege that they exhausted their administrative remedies (or that they were legally excused from doing so), the Amended Complaint is lacking a required element necessary to relief. *See Id.* Accordingly, and as set forth more fully in Section A. of this Brief herein, Plaintiff's complaints against CISD must be dismissed for failing to state a claim upon which relief can legally be obtained. Likewise, the sovereign immunity arguments set forth in Section A. of this Brief illustrate that Plaintiffs have failed to state a claim for which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6).

### *State Created Danger Claim Must be Dismissed*

Although Plaintiffs have asserted a "state crated danger" claim, the Fifth Circuit has resisted adoption of such theory of liability under the Due Process Clause.  In a 2008 case against a school district, the Western District of Texas noted:

> As recently as July 2007, the Fifth Circuit withdrew portions of an opinion which explicitly recognized the state-created danger theory in a case that placed the theory squarely before the court-the Aggie bonfire disaster that resulted in the deaths of 12 university students and injuries of 27 others in November 1999.   The court's original opinion discussed the history and limits of the theory in considering claims that a state university violated students' rights to bodily integrity under the substantive component of the Fourteenth Amendment's Due Process Clause by creating or exacerbating the dangerous situation that ultimately injured the students. The court, however, withdrew the discussion in a subsequent opinion.  That case is not the first time in which the court has expressed its reluctance to adopt the state-created danger theory.

*Skeen v. Comal Indep. Sch. Dist.*, 2008 WL 1930306 (W.D. Tex. 2008, not reported)*.* In October of 2010, the Fifth Circuit reviewed its lineage of cases involving the state-created danger theory, noting, "More recently this court has held that the state created danger theory is 'not clearly established law within this circuit such that a § 1983 claim based on this theory could be sustained' for an incident that occurred in 2006." *Sanez v. City of McAllen,* 2010 WL 3852358 (C.A.5 (Tex))*(citing Walker v. Livingston,* 381 Fed. Appx. 477, 479-80 (5th Cir. 2010)(unpublished)*(citing Morin v. Moore,* 309 F.3d 316, 321 (5th Cir. 2002)).

44.    *Skeen* dealt with the death of a student.  The court compared the facts of that case "to the tragedy of the deaths and injuries of the students in the Aggie bonfire cases," but noted the role of the state actor in creating the danger was different.  In *Skeen*, "the District discharged [the student] to the shoulder of the highway near his home; in the

Aggie bonfire case, the university endorsed a tradition of students stacking thousands of logs to build a massive bonfire structure on the university campus." *Skeen*, *2. Importantly, the court noted that since the Fifth Circuit "was unwilling to embrace the theory in the Aggie bonfire case, there is no reason to believe that it would do so on the facts [of the *Skeen*] case. Skeen may have alleged enough to satisfy the elements of a state-created danger case, but the Fifth Circuit's reluctance to embrace the state-created danger theory entitles the District to dismissal of the claim." *Id.*

45.     The reasoning of the *Skeen* court is applicable to the current case.  Just as the *Skeen* court declined to allow a state-created danger theory in a case involving the death of a student, Plaintiffs claims of assault/harassment by a third party should likewise fail.  Like the *Skeen* case, dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the present case should be dismissed.

### *§ 1983 Claim Must be Dismissed*

46.     Plaintiffs allege that Defendant, acting under color of law and acting pursuant to customs and policies of CISD, deprived B.D.S. of rights and privileges secured to her by the Fourth and Fourteenth Amendments to the United States Constitution and by "other laws of the United States."  (*See* Amended Complaint at ¶ 116.)  Plaintiffs further allege that the Defendants' alleged acts and omissions deprived B.D.S. of her rights to life, liberty and bodily integrity, which are guaranteed under the United States Constitution.  Plaintiffs assert 42 U.S.C. § 1983 as a basis to recover monetary damages for these alleged violations.

47.     In order to hold CISD liable under § 1983 for an alleged statutory or constitutional violation, a party must establish: (1) a policymaker; (2) an official policy

promulgated with deliberate indifference; and (3) a violation of a constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *see also Bd. Of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 407 (1997).   Under Texas law, final policy making authority rests exclusively with the school district's Board of Trustees.   *See Rivera v. Houston Ind. Sch. Dist.*, 349 F.3d 244, 248 (5th Cir. 2003)(stating "the Board is the one and only policymaker for HISD"); *see also* Tex. Educ. Code § 11.151 (school district trustees shall have "exclusive power to manage and govern" public schools and may "adopt such rules, regulations, and bylaws as they may deem proper").   Consequently, even if, *arguendo*, CISD's  employees acted in an unconstitutional manner, CISD may not be held liable for the unconstitutional actions of its employees under a theory of *respondeat superior.   See Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986).   Where the alleged policymaker is a government official, that official must possess "final authority to establish municipal policy with respect to the action ordered." *Pembaur*, 475 U.S. at 483.

48.   In the present case, Plaintiffs do not allege, much less identify, a policy or custom *established by CISD's Board of Trustees* which led to a constitutional or statutory deprivation.   *See Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997). Accordingly, Plaintiffs have failed to state a claim for which relief may be granted as to their § 1983 claims.

### *Official Capacity Claims Must be Dismissed*

49.   Next, Plaintiffs' claims against Hysinger and Hardin in their official capacity must be dismissed as duplicative of claims against CISD.   It has long been established by Supreme Court precedent that a suit against a government official in his

official capacity is the same as a suit against the entity which he represents. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The *Graham* Court stated:

> [o]fficial-capacity suits...'generally represent only another way of pleading an action against an entity of which an officer is an agent.' *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 (1978). As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity...It is *not* a suit against the official personally, for the real party in interest is the entity.

*Id.* at 165-66. Because CISD is a named defendant in this case, all claims against Hysinger and Hardin in their official capacity as a representative of CISD should be dismissed as duplicative.

### Respondeat Superior Claim

50.     Further, Plaintiffs' claims against CISD throughout their Amended Complaint are nothing more than claims that CISD is liable to Plaintiff based on the theory of *respondeat superior* arising out of the alleged conduct of CISD employees. Such allegations will not support legal causes of action against a governmental entity.

51.     It has long been the law that government entities and supervisors cannot be held liable based on the theory of *respondeat superior*. *Monell v. Dept. of Social Services*, 436 U.S. 658, 691 (1978); *Eason v. Saylor*, 73 F.3d 1322, 1327 (5th Cir. 1996). Neither a government entity nor a supervisor can be held liable simply because it employs a tortfeasor. *Monell*, 436 U.S. at 692. There is no allegation in the Amended Complaint to connect the CISD Board to any alleged wrongful conduct of employees, and the law makes clear that this does not establish governmental liability. Plaintiffs' claims must necessarily be dismissed.

*Title IX Claim*

52.     Plaintiffs fail to state a claim upon which relief can be granted related to their Title IX claims.   Plaintiffs allege "Defendant school district was consciously indifferent to the rights of B.D.S." (*See* Amended Petition at ¶ 97) and that "[s]uch failure caused injuries to B.D.S. leading to her easy exploitation, sexual assault and the injuries alleged herein and was a violation of Title IX thereby." (*See* Amended Petition at ¶ 98). The basis for Plaintiffs' Title IX claim is that apparently B.D.S. told B. Johnson who told someone (perhaps the parents of B.D.S.) "that a student at the Clarendon ISD touched her inappropriately."   (*See* Amended Petition at ¶ 64).   Apparently B.D.S. later told her parents something similar, and B.D.S.'s mother sent a handwritten note to B.D.S.'s teacher advising him of the claim on or about January 1, 2009.  (*See* Amended Complaint at ¶¶ 65-66).  Plaintiffs allege no further improper touching following notification to the school employee.

53.     The  United  States  Supreme  Court  addressed  student-on-student harassment under Title IX in *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999).  The Supreme Court "rejected the use of agency principles to impute liability to the district for the misconduct of its teachers." *Id.* at 641.   Where a federal funding recipient (school district) does not engage in direct harassment of students, it shall not be "liable  for  damages  unless  its  deliberate  indifferences  'subject[s]'  its  students  to harassment".  *Id.* at 644.   The deliberate indifference must, at a minimum, "cause [students] to undergo harassment or make them vulnerable to it."  *Id.* at 645.

54.     These factors limit school district liability under Title IX, in that a school district "may be liable for their deliberate indifference to **known acts of peer sexual**

**harassment** only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of known circumstances." *Id.* at 648 (emphasis added). To avoid liability, a school district "must merely respond to known peer harassment in a manner that is not clearly unreasonable". *Id.* at 649. Plaintiffs' own pleadings illustrate that (1) Principal Jeffers investigated the matter and concluded no touching took place (*see* Amended Complaint at ¶ 66), (2) CISD's Title IX investigator investigated and "found no conclusive evidence that sexual misconduct or sexual harassment took place at school" (*see* Amended Complaint at ¶¶ 69-70), and (3) this matter was discussed by Plaintiffs and Principal Jeffers (*see* Amended complaint at ¶¶ 66-67). The CISD response once they were informed of Plaintiffs' concerns was extensive and proper. Importantly, no abuse took place after CISD became aware of Plaintiffs' concerns. Interestingly, it appears that the Bridge found no evidence of misconduct by CISD or CISD employees and students in their investigation, as they made no such findings that were forwarded to CISD.

55.     Next, the Supreme Court in *Davis* notes that a school district will be "held liable in damages only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said. to deprive victims of access to the educational opportunities or benefits provided by the school." *Id.* at 651. Plaintiffs do not address, much less meet, these standards in their pleadings.

56.     Plaintiffs do not set out any details of the supposed sexual harassment, other than to state that a student "touched [B.D.S.] inappropriately". (*See* Amended Complaint at ¶ 64-65.) The Amended Complaint does not identify the "toucher", where

he or she touched B.D.S. (on the ear, the toe, . . . ?), what he or she touched B.D.S. with, or even whether such conduct took place "under the operations of a funding recipient" (where it took place). *See Id.* at 645. Thus, based on the pleadings, this Court cannot determine that such harassment, if any, was "severe" as required by *Davis*. *See Id.* at 651.

57. Likewise, there is no allegation that such conduct was "pervasive" as required by *Davis*. A fair reading of the Amended Complaint in the light most favorable to Plaintiffs is that Plaintiffs learned of the B.D.S. statement to the Bridge sometimes after November 13, 2008, but did not notify a CISD employee of any concerns until January 2009. (*See* Amended Complaint at ¶¶ 58, 64 and 65.) Not until January 23, 2009 did Plaintiffs notify Principal Jeffers. Importantly, Plaintiffs do not allege any sexual harassment took place after they notified the school employee. The most liberal reading of Plaintiffs' Amended Complaint is that the alleged harassment took place on two occasions prior to any notice to CISD, hardly meeting any definition of "pervasive". *See Id.* at 651. It further fails to meet the requirement that CISD had "actual knowledge" of any harassment. *Id.*

58. Finally, by failing to identify the alleged harasser or harassing conduct, Plaintiffs have failed to allege conduct that any fact finder could determine was "objectively offensive". *See Id.* at 650. Similarly, Plaintiffs fail to allege or set forth any facts that any such alleged conduct "can be said to deprive [B.D.S.] of access to educational opportunities or benefits provided by the school". *Id.* Accordingly, Plaintiffs have failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

*Individual Claims by Parents*

59.     Although Sherrill Michelle Smith and Tim Wayne Smith style their involvement in this suit only as "Next Friend of B.D.S.", and make no claims and assert no causes of action on behalf of themselves throughout the body of the Amended Complaint, they have included in Section XII of their Amended Complaint a request to recover damages on their own behalf.  Under Fed. R. Civ. P. 12(b)(6), dismissal is proper if the complaint lacks an allegation concerning a required element necessary to require relief.  *See Blackburn*, 42 F.3d at 931.  To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain either a direct or inferential allegation respecting all the material elements to sustain a recovery under some viable legal theory.  *See Begala*, 214 F.3d at 779.  Plaintiffs Sherrill Michelle Smith and Tim Wayne Smith have failed to assert any cause of action on their own behalf that would entitle them to recover damages.  Accordingly, the Amended Complaint is devoid of any allegations relating to the material elements necessary for the Smiths to sustain a recovery under any viable legal theory.  Accordingly, Sherrill Michelle Smith and Tim Wayne Smith's pleadings for damages must be dismissed, because even if such claim to damages accepted it as true, they do not present a claim upon which relief can legally be obtained.

## C.     Dismissal for Failure to Meet General Pleading Requirements

60.     Under the standards set forth by Rule 8(a) of the Federal Rules of Civil Procedure, the Supreme Court and the Fifth Circuit Court, a plaintiff  must provide "a short plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Oliver v. Scott,* 276 F.3d 736,

741 (5th Cir. 2002) (*quoting Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993)); FED R. CIV. PROC. 8(a).

61.     The following portions of Plaintiff's Amended Complaint fail to meet the pleadings requirement: "State Action"; "Special Relationship"; "Ratification"; and "Proximate Cause". For each of these sections of Plaintiffs' Amended Complaint, Plaintiff merely incorporates by reference all of the preceding paragraphs set forth in the Amended Complaint, followed by a brief recitation of allegations made by Plaintiff.  In each of these instances, Plaintiffs have failed to provide a short plain statement of a claim that gives Defendants fair notice of what the claim is or the grounds upon which Plaintiffs rest.  Because of these failures, Defendants are unable to prepare a defense to Plaintiffs' claims.

62.     Plaintiffs' Amended Complaint also contains a section XIV entitled "Unconstitutional Policies, Procedures, Practices and Customs." This section contains vague allegations of "customs," "practices" and "procedures" that supposedly placed B.D.S. in a "known and inherent dangerous situation," yet fails to identify what these "customs," "practices," and "procedures" allegedly were, and completely fails to identify the "known and inherent dangerous situation" to which B.D.S. was allegedly exposed. Furthermore, Plaintiffs failed to identify even one single "policy" that allegedly caused constitutional violations to occur to B.D.S.  Because of these failures, Defendants are unable to prepare a defense to Plaintiff's claims.

63.     Assuming, *arguendo*, that Plaintiffs were not required to exhaust administrative remedies under the IDEA for all of their claims, Plaintiffs' Amended Complaint is devoid of a short, concise statement of the grounds upon which the one (1)

year statute of limitations may be tolled under Federal law.  Because of this failure, Defendants are unable to prepare a defense to Plaintiffs' claims.  These failures to meet even the most basic pleading requirements should result in the dismissal of Plaintiffs' claims against Defendants.

## IV.  PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants pray that their Motions to Dismiss be granted along with all costs of court, including attorneys' fees, and for such other and further relief, by it equitable or legal, to which Defendants may be justly entitled.

Respectfully submitted,

UNDERWOOD, WILSON, BERRY,
STEIN & JOHNSON, P. C.
Slater C. Elza, State Bar No. 24000747
Andrea Slater Gulley, State Bar No. 24045994
P. O. Box 9158
Amarillo, Texas 79105
(806) 376-5613
FAX (806) 379-0316

By:  /s/ Slater C. Elza
    Slater C. Elza

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of February, 2011, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the electronic filing system of the Court. The electronic case filing system will send a "Notice of Electronic Filing" to the following attorney of record who has consented in writing to accept this Notice as service of this document by electronic means:

     Mr. Martin J. Cirkiel
     Cirkiel & Associates, P.C.
     1901 E. Palm Valley Boulevard
     Round Rock, Texas 78664

               /s/ Slater C. Elza
               Slater C. Elza