IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| B.D.S., AN INCAPACITATED PERSON b/n/f SHERRILL MICHELLE SMITH, and TIM WAYNE SMITH, INDIVIDUALLY, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | NO. 2:10-cv-284 |
| CLARENDON INDEPENDENT SCHOOL DISTRICT by and through MONTY HYSINGER, SUPERINTENDENT, IN HIS OFFICIAL AND INDIVIDUAL CAPACITY and WAYNE HARDIN, PRESIDENT OF THE CLARENDON INDEPENDENT SCHOOL DISTRICT, IN HIS OFFICIAL CAPACITY and LARRY JEFFERS, PRINCIPAL, IN HIS INDIVIDUAL CAPACITY, | § § § § § § § § § § § § § | |
| Defendants. | § | |

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR AMENDED
MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

Respectfully submitted,

Slater C. Elza
State Bar No. 24000747
Slater.Elza@uwlaw.com
Andrea Slater Gulley
State Bar No. 24045994
Andrea.Gulley@uwlaw.com
Underwood, Wilson, Berry,
Stein & Johnson, P.C.
P.O. Box 9158
Amarillo, Texas 79105-0158
Telephone:  (806) 376-5613
Fax:  (806) 349-9474

**ATTORNEYS FOR DEFENDANTS**

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................................... ii

BRIEF IN SUPPORT ..................................................................................................................... 1

      A.      Dismissal for Lack of Subject Matter Jurisdiction under Federal Rule of Civil
Procedure 12(b)(1) .............................................................................................1

            12(b)(1) Legal Standard .....................................................................................1

            Exhaustion of Remedies ....................................................................................2

            Exhaustion of Remedies not Excused .................................................................3

            Sovereign Immunity on State Contract Claims ...................................................6

      B.      Dismissal for Failure to State a Claim under Federal Rule of Civil Procedure
12(b)(6) .............................................................................................................7

            Incorporation of Prior Section ...........................................................................7

            Legal Standard ...................................................................................................7

            § 1983 Claims Must be Dismissed.....................................................................8

                  State-Created Danger ...........................................................................8

                  Special Relationship............................................................................11

                  Policy or Custom Claims Fail ..............................................................13

            No Evidence of Lack of Training or Supervision ...............................................16

            Title IX Claim ..................................................................................................17

            Claims Against Hysinger and Jeffers – Official Immunity ..................................18

            Official Capacity Claims Must be Dismissed......................................................22

            Statute of Limitations.........................................................................................23

PRAYER....................................................................................................................................... 24

CERTIFICATE OF SERVICE ..................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Adolph v. FEMA*, 854 F.2d 732 (5th Cir. 1988) .......................................................................... 7

*Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*, 988 F.2d 1157 (Fed. Cir. 1993).... 7

*Baker v. Putnal*, 75 F.3d 190 (5th Cir. 1996) ............................................................................. 19

*Bd. Of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397 (1997) ........... 14, 15, 16

*Begala v. PNC Bank*, 214 F.3d 776 (6th Cir. 2000.................................................................. 8, 10

*Beltran v. City of El Paso*, 367 F.3d 299 (5th Cir. 2004) .......................................................... 10

*Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320 (Tex. 2006)...................................................................... 6

*Bennett v. City of Slidell*, 728 F.2d 762 (5th Cir. 1984), *cert. denied*, 472 U.S. 1016 (1985)...... 14

*Blackburn v. City of Marshall*, 42 F.3d 925 (5th Cir. 1995)......................................................... 7

*Breen v. Tex. A&M Univ.*, 485 F.3d 325 (5th Cir. 2007), rev'd 494 F.3d 516 (5th Cir. 2007) .... 10

*Bryson v. City of Edmond*, 905 F.2d 1386 (10th Cir. 1990) ........................................................ 11

*Charlie F. v. Bd. of Educ. of Skokie Sch. Dist 68.*, 98 F.3d 989 (7th Cir. 1996) ........................... 4

*City of Austin v. L.S. Ranch, Ltd.*, 970 S.W.2d 750 (Tex.App.—Austin 1998, no pet.)................. 6

*City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989)........................................................... 16, 17

*City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113 (2005).......................................... 23

*Conley v. Gibson*, 355 U.S. 41 (1957) ......................................................................................... 7

*Cornelius v. Town of Highland Lake, Ala.*, 880 F.2d 348 (11th Cir 1989) ................................. 12

*Crawford-El v. Britton*, 523 U.S. 574 (1998) ............................................................................ 19

*D.A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450 (5th Cir. 2010) .................................................. 3

*D.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364 (3rd Cir. 1992) .. 11, 12, 13

*Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999)....................................... 17, 18

*DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989) .. 11, 12, 13

*Doe v. Louisiana*, 2 F.3d 1412 (5th Cir. 1993), cert. denied 510 U.S. 1164 (1994).................... 21

*Elliott v. Foufas*, 867 F.2d 877 (5th Cir. 1989)................................................................. 8

*Espinoza v. Missouri-Pacific Ry. Co.*, 754 F.2d 1247 (5th Cir. 1985) ......................................... 8

*Federal Sign v. Tex. S. Univ.*, 951 S.W.2d 401 (Tex. 1997)........................................................ 6

*Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52 (1st Cir. 2002) ........................................... 2, 3, 5

*Guidry v. Bank of LaPlace*, 954 F.2d 278 (5th Cir. 1992)........................................................... 8

*Hickey v. Irving Indep. Sch. Dist.*, 976 F.2d 980 (5th Cir. 1992) ................................................ 23

*Hodorowski v. Ray*, 844 F.2d 1210 (5th Cir. 1988)....................................................................... 21

*Holmes v. Tex. A&M Univ.*, 145 F.3d 681 (5th Cir. 1998) ......................................................... 23

*Honig v. Doe*, 484 U.S. 305 (1988) ................................................................................................ 4

*Hooker v. Dallas Indep. Sch. Dist.*, 2010 WL 4025877 (N.D. Tex., Oct. 13, 2010)................. 4, 5

*Hope v. Pelzer*, 536 U.S. 730 (2002) ..................................................................................... 19, 20

*Howery v. Allstate Ins. Co.*, 243 F.3d 912 (5th Cir. 2001) ....................................................... 1

*Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198 (5th Cir. 1994) ................................................ 13

*Kentucky v. Graham*, 473 U.S. 159 (1985)................................................................................... 22

*Kiser v. Garrett*, 67 F.3d 1166 (5th Cir. 1995)...................................................................... 21, 22

*Lavellee v. Listi*, 611 F.2d 1129 (5th Cir. 1980)......................................................................... 23

*Loch v. Bd. of Educ. of Edwardsville Community School District No. 7*, 573 F. Supp.2d 1072
    (S.D. Ill. 2008) ....................................................................................................................... 3

*Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242 (5th Cir. 1997)...................................................... 8

*Luevano v. Geyer*, 355 Fed. Appx. 834 (5th Cir. 2009) ............................................................. 10

*Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404 (5th Cir. 2009)............................................................. 19

*M.T.V. v. DeKalb County Sch. Dist.*, 446 F.3d 1153 (11th Cir. 2006) ........................................... 3

*McClendon v. City of Columbia*, 258 F.3d 432 (5th Cir. 2001) rev'd 305 F.3d at 325 ...... 9, 10, 20

*McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308 (5th Cir. 2002) ........................................... 10

*Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1970) ............................. 14

*Morin v. Moore,* 309 F.3d 316 (5th Cir. 2002) .............................................................................. 9

*N.B. v. Alachua Co. Sch. Bd.*, 84 F.3d 1376 (11th Cir. 1996) .................................................... 3, 5

*Neitzke v. Williams*, 490 U.S. 319 (1989) ...................................................................................... 8

*Paterson v. Weinberger,* 644 F.2d 521 (5th Cir. 1981) ................................................................ 2

*Payne v. Peninsula Sch. Dist.*, 598 F.3d 1123 (9th Cir. 2010) ...................................................... 5

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S. Ct. 1292, 1298 (1986) ........................ 14, 15

*Pihl v. Mass. Dep't of Educ.*, 9 F.3d 184 (1st Cir. 1993) ............................................................. 5

*Pineda v. City of Houston,* 291 F.3d 325 (5th Cir. 2002) ....................................................... 15, 16

*Piotrowski v. City of Houston,* 237 F.3d 567 (5th Cir. 2001) ..................................................... 15

*Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244 (5th Cir. 2003) ............................................ 10

*Rose v. Yeaw*, 214 F.3d 206 (1st Cir. 2000) .................................................................................. 3

*Saenz v. City of McAllen,* 396 Fed. Appx. 173 (5th Cir. 2010) ............................................... 9, 10

*Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995) ......................................................................... 19

*Snyder v. Trepagnier*, 142 F.3d 791 (5th Cir. 1998) ................................................................... 16

*Spann v. Tyler Indep. Sch. Dist.,* 876 F.2d 437 (5th Cir. 1989) ................................................. 15

*Spiller v. City of Texas City,* 130 F.3d 162 (5th Cir. 1997) ........................................................ 15

*Stockman v. Fed. Election Comm'n*, 138 F.3d 144 (5th Cir. 1998) ............................................. 1

*Tex. Dep't of Transp. v. Jones*, 8 S.W. 3d 636 (Tex. 1999) ........................................................ 6

*Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447 (5th Cir. 2001) ................................................. 19

*Veney v. Hogan*, 70 F.3d 917 (6th Cir. 1995) .............................................................................. 19

*Walker v. Livingston,* 381 Fed. Appx. 477 (5th Cir. 2010) ............................................................ 9

*Weber v. Cranston Sch. Comm.*, 212 F.3d 41 (1st Cir. 2000) ........................................................ 3

*Wernecke v. Garcia*, 591 F.3d 386 (5th Cir. 2009) ...................................................................... 19

**Statutes and Other Authorities**

19 TEX. ADMIN. CODE § 89.1151(c) (2007) ................................................................................... 24

20 U.S.C § 1415 (1988) ............................................................................................................... 12

20 U.S.C. § 1415(l) ........................................................................................................................ 2

20 U.S.C. §1415(b)(6)(A) ............................................................................................................. 2

42 U.S.C. § 1983 ................................................................................................................... passim

29 U.S.C.A. § 791 .......................................................................................................................... 2

42 U.S.C.A. § 12101 ...................................................................................................................... 2

Americans with Disabilities Act of 1990 ........................................................................... 2, 5, 23

FED. R. CIV. P. 12(b)(1) ...................................................................................................... 1, 2, 24

FED. R. CIV. P. 12(b)(6) ......................................................................................................... 7, 8

Rehabilitation Act of 1973 ........................................................................................... 2, 3, 23

TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) ........................................................................ 23

TEX. LOCAL GOV'T CODE § 271.151(2) ......................................................................................... 7

TEX. LOCAL GOV'T CODE § 271.156 ............................................................................................... 7

 The Individuals with Disabilities Education Act ................................................................. passim

TO THE HONORABLE UNITED STATED DISTRICT JUDGE:

COME NOW DEFENDANTS, Clarendon Independent School District ("CISD"), Monty Hysinger ("Hysinger"), Larry Jeffers ("Jeffers") and Wayne Hardin ("Hardin") (collectively, "Defendants") and file this, their Brief in Support of Their Amended Motion to Dismiss Plaintiffs' Second Amended Complaint, and in support thereof would respectfully show the Court as follows:

## BRIEF IN SUPPORT

### A.     Dismissal for Lack of Subject Matter Jurisdiction Under FED. R. CIV. P. 12(b)(1)

*12(b)(1) Legal Standard*

1.      Defendants ask the Court to dismiss Plaintiffs' suit, as authorized by FED. R. CIV. P. 12(b)(1), because this Court does not have subject matter jurisdiction over the matters set forth in Plaintiff's Second Amended Complaint ("SAC").  All legal claims asserted by Plaintiffs rely on the same facts as set forth in the SAC at paragraphs 20-102.  (*See* Plaintiffs' SAC at ¶¶ 20, 103, 109, 118, 122, 124, 128, 130, 135, 143, 145, 148, 150, 152, 155 and 157, incorporating ¶¶ 20-102.)  There are no factual assertions or legal claims not related to B.D.S.'s education and educational placement at CISD.  (*See* SAC.)

2.      "Federal Courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims."  *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998).   The court "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum."  *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).  If subject matter jurisdiction is lacking, the court must dismiss the suit.  *See Stockman*, 138 F.3d at 151.

3.      The defendant either makes a "facial" or "factual" jurisdictional attack on a plaintiff's complaint. *Paterson v. Weinberger,* 644 F.2d 521, 523 (5th Cir. 1981). In order to make a "facial" jurisdictional attack, the defendant merely files a motion under FED. R. CIV. P. 12(b)(1) challenging the court's jurisdiction. *Id.*

***Exhaustion of Remedies***

4.      In all causes of action set forth in the SAC, Plaintiffs claim Defendants acted wrongfully towards B.D.S. and Tim Smith related to the education and educational placement provided B.D.S. by CISD.   However, Plaintiffs have failed to exhaust their administrative remedies as they pertain to any of their claims.   The Individuals with Disabilities Education Act ("IDEA") states:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], Title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, *except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.*

20 U.S.C. § 1415(l) (emphasis added).   The IDEA provides relief for "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."  20 U.S.C. §1415(b)(6)(A).  "This requirement is not limited to claims based directly upon violations of the IDEA."  *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 59 (1st Cir. 2002).  Rather, the exhaustion requirement "applies even when the suit is brought pursuant to a different statute so long as the party is seeking relief that is

available under subchapter II of IDEA."[1]  *Id.* (*citing Rose v. Yeaw*, 214 F.3d 206, 210 (1st Cir. 2000)).

5.      The "IDEA's mandate is explicit: plaintiffs must exhaust [the Act's] impartial due process hearing procedures in order to bring a civil action... ." *Weber v. Cranston Sch. Comm.*, 212 F.3d 41, 53 (1st Cir. 2000).  "The philosophy of the IDEA is that plaintiffs are required to utilize the elaborate administrative scheme established by the IDEA before resorting to the courts to challenge the actions of the local school authorities." *M.T.V. v. DeKalb County Sch. Dist.*, 446 F.3d 1153, 1158 (11th Cir. 2006) (*quoting N.B. v. Alachua Co. Sch. Bd.*, 84 F.3d 1376, 1378 (11th Cir. 1996))[2].

6.      A review of the SAC also reveals that all of Mr. Smith's claims relate to the education of his child and are therefore subject to the requirements of the IDEA.  Courts do not differentiate between the parent's claims and student claims as it relates to the requirement to exhaust administrative remedies.  *M.T.V.,* 446 F.3d at 1158.  This applies even to claims for monetary damages.  *Id.* (*citing N.B. v. Alachua Co. Sch. Bd.*, 84 F.3d 1376, 1379 (11th Cir. 1996)).  Because Plaintiffs have failed to exhaust their administrative remedies, the Court should dismiss the suit for lack of jurisdiction. *DeKalb*, 446 F.3d at 1158.

### Exhaustion of Remedies not Excused

7.      If exhaustion has not occurred, Plaintiffs can only circumvent the exhaustion requirement where recourse to IDEA's administrative proceedings would be futile or inadequate.

---

[1] Courts have found that § 1983 claims and Title IX claims are also subject to the IDEA exhaustion requirement. *Frazier v. Fairhaven*, 276 F.3d 52, 60-63 (1st Cir. 2002); *D.A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 456 (5th Cir. 2010); *Loch v. Bd. of Educ. of Edwardsville Community School District No. 7*, 573 F. Supp.2d 1072, 1082 (S.D. Ill. 2008).

[2] Like the Plaintiffs in this case, the *M.T.V.* plaintiffs also alleged claims under the Rehabilitation Act and the Americans with Disabilities Act, which were dismissed for failure to exhaust administrative remedies.

*Honig v. Doe,* 484 U.S. 305, 327 (1988).  The burden of demonstrating such excuse lies with the Plaintiff.  *Id.*

8.      Plaintiffs argue "there is no need for administration exhaustion in this cause" because they "only seek pecuniary damages in this lawsuit, which is not the type of relief a 'Texas Education Agency Administrative Law Judge' could provide."[3]  (SAC at ¶ 12.)  Plaintiffs also claim that "administrative exhaustion" would be futile since B.D.S. is no longer a student of the CISD.  (SAC at ¶ 13.)

9.      The Plaintiff in *Charlie F. v. Bd. of Educ. of Skokie Sch. Dist. 68*, 98 F.3d 989 (7th Cir. 1996), argued that he was not required to exhaust administrative remedies because he sought only monetary relief, a remedy not available under the IDEA.  *Id.* at 992.  The Seventh Circuit rejected this argument, noting "[t]he nature of the claim and the governing law determine the relief no matter what the plaintiff demands.  If this principal is equally applicable for purposes of [the IDEA], then the theory behind the grievance may activate the IDEA's process, even if the plaintiff wants a form of relief that the IDEA does not supply."  *Id.*  The court noted that parents cannot ignore remedies under the IDEA and insist on those of their own devising. *Id.*  "We read 'relief available' to mean relief for the events, condition, or consequences of which the person complains, not necessarily relief of the kind the person prefers."  *Id.*

10.      The facts in *Hooker v. Dallas Indep. Sch. Dist.*, 2010 WL 4025877 (N.D. Tex., Oct. 13, 2010), mirror the present matter.  In *Hooker*, the Plaintiffs complained about their child's education, including claims that the school district retaliated against them by using child protective services reports to intimidate them.  *Id.* at * 5.  Noting that all of the claims related to

---

[3] It is worth noting that while Plaintiffs seek to avoid their duty to exhaust their administrative remedies by stating they are seeking **_only_** pecuniary damages, they in fact seek non-pecuniary damages in asking the Court in their prayer to direct CISD "to take any and all other specific actions required by any and all of the statutes noted" in their SAC – the very types of remedies that could have been afforded in a due process hearing.

the educational placement of their son, including the parents' retaliation claims brought into the ADA and the Retaliation Act, the Court held that the claims were subject to IDEA exhaustion requirement.  *Id.* at * 6.

11.     Plaintiffs next claim that by withdrawing their daughter from CISD, the IDEA exhaustion requirements no longer apply.  In *Frazier v. Fairhaven Sch. Comm*, 276 F.3d 52 (1st Cir. 2002), the plaintiffs argued that exhaustion was futile where their daughter had graduated from high school prior to filing of the suit, arguing that there was nothing the administrative process could do "to ameliorate the bungling that marred her educational experience."  *Id.* at 63. However, the Court correctly noted that even after graduation, compensatory education is an available remedy.  *Id.* (c*iting Pihl v. Mass. Dep't of Educ.*, 9 F.3d 184, 188-89 (1st Cir. 1993)). There can be no doubt that Plaintiffs' complaints, if determined to have been valid, could have been remedied through new, different or additional academic, psychological and therapeutic corrective and supportive services provided by CISD or through contract service providers (even today), regardless of whether B.D.S. is currently enrolled in CISD.[4]  *See, Id.*

12.     Similarly, the plaintiffs in *Payne v. Peninsula Sch. Dist.*, 598 F.3d 1123 (9th Cir. 2010) argued that exhaustion would be futile because the child was no longer in the school district, but was being home-schooled.  *Citing N.B. v. Alachua County Sch. Bd.*, 84 F.3d 1376, 1379 (11th Cir. 1996), the *Payne* court noted that the removal of a child from the school district does not waive the exhaustion of remedies requirement.  *Id.* at 1128.  Plaintiffs are not excused from compliance with the IDEA and their claims must be dismissed for lack of jurisdiction.

---

[4]  "[T]he entire matter of timing is largely within a plaintiff's control. … It would be a hollow gesture to say that exhaustion is required-and then to say that plaintiffs, by holding back until the affected child graduates, can evade the requirement." *Frazier*, 276 F.3d at 63.

*Sovereign Immunity on State Contract Claims*

13.     This Court lacks jurisdiction over Plaintiffs' state law breach of contract claims, as CISD is entitled to sovereign immunity.   The burden is on Plaintiffs to allege facts affirmatively showing that the trial court has subject matter jurisdiction.   *See Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 639 (Tex. 1999). Courts should be particularly concerned with jurisdictional challenges by governmental entities because the high cost of defending lawsuits is ultimately borne by the public.   *See City of Austin v. L.S. Ranch, Ltd.*, 970 S.W.2d 750, 753 (Tex.App.—Austin 1998, no pet.).

14.     A party suing a governmental entity protected by sovereign immunity must allege consent to suit either by reference to a statute or express legislative permission.   *See Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999).   In *Federal Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 408-09 (Tex. 1997), the Texas Supreme Court restated the well established rule of law that when a political subdivision enters into a contract with a private entity, it waives its immunity from liability, but not suit, with respect to any breach of contract claim.   Absent consent and a pleading of consent, this Court is without jurisdiction to hear this case.   *See Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 323-24 (Tex. 2006) (explaining the nature of immunity as it extends to school districts).

15.     Following many years of disagreement as to whether school districts and other local government units were subject to suit for breach of contract, the 2005 Texas Legislature amended Chapter 271 of the TEX. LOCAL GOV'T CODE and authorized suits against school districts in certain instances.   Specifically, Chapter 271 waived immunity for breach of contract claims against school districts for written contracts where goods and services were provided to

the local government entity.  TEX. LOCAL GOV'T CODE § 271.151(2).  Plaintiffs have not alleged

that they entered into a written contract for providing goods or services to CISD.

16.     Further, Subchapter I defines "adjudication" of a contract claim against a school

district to mean "the bringing of a civil suit and prosecution to final judgment in county or state

court . . . ."  *Id.* at 271.151(1).  Also, TEX. LOCAL GOV'T CODE § 271.156 specifically states that

"[t]his subchapter does not waive sovereign immunity to suit in federal court."  Accordingly, this

Court does not have jurisdiction over the State contract claim.

## B.     Dismissal for Failure to State a Claim under Federal Rule of Civil Procedure 12(b)(6)

### *Incorporation of Prior Section*

17.     Each of the dismissal grounds and arguments set forth in A. above also serve as a

basis for dismissal under FED. R. CIV. P. 12(b)(6) and such arguments and authorities are

incorporated herein.

### *Legal Standard*

18.     A court may dismiss a claim under FED. R. CIV. P. 12(b)(6) if "it appears to a

certainty that no relief can be granted under any set of facts provable in support of its allegations

or if the allegations, accepted as true, do not present a claim upon which relief legally can be

obtained."  *Adolph v. FEMA*, 854 F.2d 732, 735 (5th Cir. 1988); *see Conley v. Gibson*, 355 U.S.

41, 45-46 (1957).  Under FED. R. CIV. P. 12(b)(6), dismissal is proper if the complaint lacks an

allegation concerning a required element necessary to obtain relief.  *Blackburn v. City of

Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).  FED. R. CIV. P. 12(b)(6) allows courts to "eliminate

actions that are fatally flawed in their legal premises and destined to fail, and thus to spare

litigants the burdens of unnecessary pretrial and trial activity."  *Advanced Cardiovascular Sys.,

Inc. v. SciMed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993) (*citing Neitzke v. Williams*,

490 U.S. 319, 326-27 (1989)).  To survive a motion to dismiss under FED. R. CIV. P. 12(b)(6), a complaint must contain either a direct or inferential allegation respecting all the material elements to sustain a recovery under some viable legal theory; more than bare assertions of legal conclusions are required to satisfy federal notice pleading requirements.  *Begala v. PNC Bank*, 214 F.3d 776, 779 (6th Cir. 2000).

19.     In considering FED. R. CIV. P. 12(b)(6) motions, courts accept only well-pleaded allegations of fact as true and may rely upon matters outside the pleadings for which there exists no genuine issues of fact.  *See Espinoza v. Missouri-Pacific Ry. Co.*, 754 F.2d 1247, 1248 n. 1 (5th Cir. 1985).  In ruling on a FED. R. CIV. P. 12(b)(6) motion, the well-pleaded allegations of the complaint must be taken as true.  *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 251 n. 13 (5th Cir. 1997).  But, the plaintiff must allege specific facts, not mere conclusory allegations. *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989).  "Conclusory allegations and unwarranted deductions of fact are not admitted as true."  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).

### § 1983 Claims Must be Dismissed

#### State-Created Danger

20.     Plaintiffs' state created danger claim fails.  The basis for such claim is that B.D.S. has cognitive limitations "and an inability to communicate."  (SAC at ¶ 125.)  Although B.D.S. has "an inability to communicate" Plaintiffs provide no support for the "state-created danger" claim other than that (1) B.D.S. came home on February 12, 2008 "and **told her parents** that another student had touched her 'private parts'"; (SAC at ¶ 54), (2) on February 20, 2008, B.D.S. communicated to some unidentified person "that she was touched by the student"; (SAC at ¶ 55),

and (3) B.D.S. communicated to an investigator at the Bridge in November 2008 "that a student at the Clarendon I.S.D., Thad, had touched her inappropriately."  (SAC at ¶ 71.)

21.     Plaintiffs allege they informed an unnamed "school district employee" (SAC ¶ 54), unnamed school officials (SAC ¶ 55) and teacher Steve Reynolds (SAC ¶ 74) of these communications from B.D.S.  Importantly, Plaintiffs never allege that any Defendant in the current suit had prior knowledge of (1) any improper propensities of "Thad," (2) any inappropriate touching of B.D.S. or (3) any information of B.D.S.'s numerous communications to the different, mostly unidentified, people set out in the SAC.  Because there are no allegations of actual knowledge by any of the Defendants, all § 1983 claims under the state-created danger theory fail as a matter of law and must be dismissed as there is no claim for which relief may be granted.

22.     In the alternative, the Fifth Circuit and United States Supreme Court have resisted adoption of a "state created danger" theory of liability under the Due Process Clause.  In October of 2010, the Fifth Circuit reviewed its lineage of cases involving the state-created danger theory, noting, "[m]ore recently this Court has held that the state created danger theory is 'not clearly established law within this circuit such that a § 1983 claim based on this theory could be sustained' for an incident that occurred in 2006."  *Saenz v. City of McAllen,* 396 Fed. Appx. 173, 177 (5th Cir. 2010) (*citing Walker v. Livingston,* 381 Fed. Appx. 477, 479-80 (5th Cir. 2010) (unpublished) (*citing Morin v. Moore,* 309 F.3d 316, 321 (5th Cir. 2002)).

23.     The Fifth Circuit has on two occasions explicitly adopted the state-created danger theory, before ultimately reversing itself.  *See McClendon v. City of Columbia,* 258 F.3d 432, 436 (5th Cir. 2001) rev'd 305 F.3d at 327 (Fifth Circuit *en banc* reversed the Panel, holding that "neither this Court nor the Supreme Court has yet determined whether a citizen has a

constitutional right to be free from state-created dangers" and because the Plaintiff failed to establish the necessary elements of the theory, it would not apply even if available), *Breen v. Tex. A&M Univ.*, 485 F.3d 325, 337 (5th Cir. 2007), rev'd 494 F.3d 516 (5th Cir. 2007) (granting rehearing and issuing a subsequent opinion omitting discussion of the state-created danger theory). Also, the Fifth Circuit addressed this issue in *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 249 n. 5 (5th Cir. 2003) where the Court noted that the Panel Decision in *McClendon* "was vacated and with it our recognition of the [state-created danger] theory").

24.     Even if this Court found that the "state-created danger" theory was constitutionally sound, Plaintiffs fail to plead and support the necessary elements. *See Saenz v. City of McAllen*, 396 Fed. Appx. 173 (5th Cir. 2010). To recover under the state-created danger theory, it would be assumed the Plaintiff would have to show:

1.     The state actors created or increased the danger to the plaintiff; and
2.     The state actors acted with deliberate indifference.

*Luevano v. Geyer*, 355 Fed. Appx. 834, 836 (5th Cir. 2009) (*citing McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 313 (5th Cir. 2002)). Deliberate indifference in the state-created danger context requires that a state actor knew of an excessive risk to the victim's health or safety and disregarded that risk. *See Beltran v. City of El Paso*, 367 F.3d 299, 307 (5th Cir. 2004); *McClendon*, 305 F.3d at 326 n. 8. "A state actor's actual knowledge is critical to the inquiry." *Luevano*, 355 Fed. Appx. at 836 (*quoting McClendon*, 305 F.3d at 326 n. 8). Accepting every allegation of Plaintiffs as true, they have not alleged any facts, directly or inferentially, in which a reasonable jury could find that any Defendant had actual knowledge of any danger created by having two special needs children in the same room. *See Begala*, 214 F.3d at 779. These Plaintiffs do not even allege that they told these Defendants of their concerns, or that these Defendants had knowledge of any possible danger to B.D.S., real or perceived.

25.     Next, post *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989) courts have addressed state-created danger claims "by asking whether the state actors involved affirmatively acted to *create* Plaintiffs' danger, or to render him or her more to it." *D.R. v. Middle Bucks Area Vocational Technical Sch.,* 972 F.2d 1364, 1373 (3rd Cir. 1992) (*citing Bryson v. City of Edmond,* 905 F.2d 1386, 1392 (10th Cir. 1990)).  These Plaintiffs have "supplied no evidence that [the state actors] acted to create or to exacerbate the danger" the student posed on B.D.S.  *Id.* at 1374.  Further, with "liability under the state-created danger theory . . . predicated upon the state's affirmative acts" Plaintiffs' claims based on the *inaction* of Defendants to respond to unknown facts fail as a matter of law.  *Id.*  Claiming that Defendants could have known more or should have done more are just negligence claims couched as Constitutional violations.  *See Id.* at 1375.

*Special Relationship*

26.     Plaintiffs likewise set forth a cause of action under the "special relationship" doctrine as part of their § 1983 claims.  Specifically, Plaintiffs allege "a special custodial relationship existed at all pertinent times between the Defendants and B.D.S. is a student with a disability."  (SAC ¶ 129.)  Plaintiffs do not accuse any Defendant of sexual harassment or assault, but instead accuse a student of such conduct.

27.     The Supreme Court has been clear that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors."  *DeShaney*, 489 U.S. at 197.  A "special relationship" claim relies on a theory that when a state enters into a "special relationship" with one of its citizens, it may be held liable for failing to protect her from the private actions of third parties.  *Middle Bucks*, 972 F.2d at 1369 (*citing Cornelius v. Town of Highland Lake, Ala.*, 880 F.2d 348, 352

(11th Cir 1989)).  Such liability attaches under § 1983 when the state fails to protect a citizen to whom it owes an affirmative duty.  *Id*.  The *DeShaney* Court refused to impose such a constitutional duty, absent the existence of a relationship such as (1) a state to prisoners or (2) to the involuntarily committed and (3) possibly "to other categories of persons in custody by means of 'similar restraints of liberty'."  *Middle Bucks*, 972 F.2d at 1370 (*citing DeShaney*, 489 U.S. at 200).  CISD did nothing to restrain B.D.S.'s "liberty [so] that it renders [her] unable to care for [herself], and at the same time fails to provide for [her] basic human needs – *e.g.*, food, clothing, shelter, medical care, and reasonable safety… ."  *DeShaney*, 489 U.S. at 200.

28.     The law then necessarily turns on whether a child subject to compulsory school attendance falls within such a "special relationship."  The *Middle Bucks* court noted that no such "special relationship" exists in such instance because (1) the parents decide whether the education takes place at home, in public schools, in private schools or some type of vocational school, (2) parents retain the right to remove students from classes and (3) with special education students parents participate in and approve the precise educational programs developed for their child." *Id.* at 1371 (*citing* 20 U.S.C. § 1415 (1988)).  A school district's authority over a child during the school day cannot create the type of physical custody necessary to bring it within the "special relationship" envisioned by *DeShaney*, and parents remain the primary caregiver of school children.  *Id*. at 1371, 92.  Each one of these factors applies in the current case, and Plaintiffs even concede B.D.S. "lives with her parents *who are her caretakers*."  (SAC at ¶ 21 (emphasis added); *see also* SAC at ¶ 15.)

29.     Plaintiffs also concede that B.D.S. had the freedom on a daily basis to turn to non-state actors for help as (1) she went home each evening to spend time with her family, (2) regularly complained to her parents regarding her treatment at school, and (3) allegedly told

multiple people outside of the school district of the alleged abuse on any number of occasions. (SAC ¶¶ 4, 54-55.)  *See Middle Bucks*, 972 F.2d at 1372.  Accordingly, B.D.S. was not denied "meaningful access to sources of help." *Id*.  That her parents chose to send her back into the classroom daily without ever notifying a single Defendant of the accusations made the basis of this suit does not create a constitutional violation.

30.     Plaintiffs' "special relationship" argument is further negated by the repeated claims throughout the SAC that B.D.S. had the liberty to leave the classroom at will, with CISD and its employees refusing to confine her or restrict her freedom to leave (SAC at ¶¶ 46, 47, 51, 52, 53.)  Such pleadings certainly dispel any notion that her attendance at CISD bears any resemblance or similarity to "prisoners" or the "involuntarily committed".  *See DeShaney*, 489 U.S. at 200.  Accordingly, the "special relationship" cause of action fails to state a claim upon which relief may be granted.[5]

> *Policy or Custom Claims Fail*[6]

31.     While § 1983 creates a cause of action for a plaintiff who has been deprived of a right or interest secured by the Constitution by a person who is acting under color of state law, a local government unit is not liable under § 1983 unless a deprivation of constitutional rights resulted from an official policy or custom of the local government unit. In this case, there is no evidence that an unconstitutional custom, policy or practice was a moving force behind any

---

[5] The Fifth Circuit looked at the "special relationship" cause of action in *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198 (5th Cir. 1994).  The Court noted in n. 7 that public school attendance is deemed voluntary in Texas because parents are permitted to withdraw their students from public school and remain the principal caretakers of their children.  Although the Court seems to question whether there could be a "special relationship" between a school and a student, they pass on making such a ruling.  *Id*. at 203.  To create such a "special relationship" would make schools virtual guarantors of student safety.  *Id*. at 203.

[6] These claims are only against CISD.

alleged constitutional violation with respect to the Plaintiffs claims. The conclusory allegations contained in Plaintiff's pleadings regarding Defendants' policies and procedures are not the type of allegations necessary to survive a motion to dismiss. Further, bare allegations of failure to train or supervise without specifying how any lack of training or supervision caused the incident or that it was a recurring situation is not sufficient to raise any material fact issues to defeat summary judgment.

32.     In order for CISD to be held liable under § 1983, its policy-making officials must have perpetrated a constitutional violation through its policy or custom. *See Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 at 694 (1970).  Where a governmental entity is the defendant, the burden is on plaintiff to prove (1) the existence of an unconstitutional policy, custom or practice of the municipality, that (2) caused the deprivation of rights complained of, and (3) that the acts complained of were authorized or ratified by a policy maker with final policymaking authority, or were taken pursuant to this unconstitutional policy, custom or practice.  *Id.*, *Bennett v. City of Slidell*, 728 F.2d 762, 766-770 (5th Cir. 1984), *cert. denied,* 472 U.S. 1016 (1985). Under § 1983, an entity may only be held liable for those acts for which it is actually responsible; not those which are the responsibility of one or more of its employees. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S. Ct. 1292, 1298 (1986). Thus, under § 1983, rigorous standards of culpability and causation are required to ensure that a government entity is not held liable solely for the actions of an employee.  *Bd. Of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 405 (1997).

33.     Further, "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality.  The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged."  *Id.* at

404.  Thus, under § 1983, a plaintiff must also demonstrate that (1) the policy or custom was executed with deliberate indifference to the clearly established rights of the plaintiff; and, (2) that there exists a direct causal link between the municipality's policy or custom and the deprivation of the plaintiff's federal rights.  *See Id.*  Finally, Plaintiff's "description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts."  *Spiller v. City of Texas City,* 130 F.3d 162, 167 (5th Cir. 1997). Plaintiffs have identified and described <u>no</u> policy or custom of CISD that was the moving force behind B.D.S.'s alleged deprivation of constitutional rights.  Instead, they improperly rely on conclusory statements that policies regarding restraint, permissible molestation, dangerous condition, training and supervision or customs were faulty or nonexistent.

34.    A <u>custom</u> may only be inferred if a governmental employee engages in acts that, although not formally approved by an appropriate decision-maker, are so widespread they have the force of law.   *Brown,* 520 U.S. at 404, 117 S. Ct. at 1388. Through this principal, "[governmental] liability is limited to action for which the [entity] is actually responsible." *Pembaur,* 475 U.S. at 479, 106 S. Ct. at 1298; *accord Spann v. Tyler Indep. Sch. Dist.,* 876 F.2d 437, 438 (5th Cir. 1989). Liability under § 1983 requires the unconstitutional conduct alleged "be directly attributable to the [governmental unit] through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir. 2001).  Therefore, to hold a government unit liable under § 1983, a plaintiff must demonstrate a policy-making governmental official has knowledge of an alleged unconstitutional custom.  *Pineda v. City of Houston,* 291 F.3d 325, 330 (5th Cir. 2002).  Plaintiffs have not alleged that any of the alleged conduct towards B.D.S. or Tim Smith was approved by the School Board or was widespread, but instead allege

that any such conduct by CISD was restricted to these Plaintiffs by certain school employees. *See Brown*, 520 U.S. at 404.  Further, Plaintiffs have not alleged that CISD had knowledge of any alleged unconstitutional policies or customs.  *Pineda*, 291 F.3d at 330.

> Actual knowledge may be shown by such means as discussions at council meetings or receipt of written information. Constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity.

*Id.*  Vaguely attributed knowledge to unidentified individuals in management or within the chain of command is not sufficient to establish constructive knowledge against a school district and is thus insufficient to hold CISD liable.  *Id.* at 331.  Simply stated, for liability to attach to CISD, Plaintiffs must show CISD *made a decision* to violate the constitution. *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998).  Plaintiffs have wholly failed in this regard.

### *No Evidence of Lack of Training or Supervision*

35.     The United States Supreme Court has recognized claims for failure to train where "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers of the [governmental entity] can reasonably be said to have been deliberately indifferent to the need."  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989). In that event, the failure to provide training may represent a policy for which a governmental entity is responsible, and for which the City may be held liable if it actually causes injury.  *Id.* Plaintiffs assert in SAC ¶¶ 140-41 that the training and supervision policies related to "a known and inherent dangerous situation".  However, Plaintiffs do not allege that CISD, or any Defendant herein, had any notice of any dangerous situation regarding B.D.S.  Accordingly,

Plaintiffs' claims regarding policy and custom as it is related to training and supervision necessarily fail. *Id.*

### Title IX Claim

36.     Plaintiffs fail to state a claim upon which relief can be granted related to their Title IX claims.  Plaintiffs allege "Defendant school district was consciously indifferent to the rights of B.D.S." (SAC at ¶ 119) and that "[s]uch failures caused injuries to B.D.S. leading to her easy exploitation, sexual assault and the injuries alleged herein and was a violation of Title IX thereby." (SAC at ¶ 120.)  The basis for Plaintiffs' Title IX claim is that apparently B.D.S. told B. Johnson who told someone (perhaps the parents of B.D.S.) "that a student at the Clarendon ISD . . . touched her inappropriately."  (SAC at ¶ 71.)   Apparently B.D.S. later told her parents something similar, and B.D.S.'s mother sent a handwritten note to B.D.S.'s teacher advising him of the claim on or about January 21, 2009.  (SAC at ¶ 74.)

37.     The Supreme Court addressed student-on-student harassment under Title IX in *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999).  The Supreme Court "rejected the use of agency principles to impute liability to the district for the misconduct of its teachers." *Id.* at 642.  Where a federal funding recipient (school district) does not engage in direct harassment of students, it shall "not be liable for damages unless its deliberate indifference 'subject[s]' its students to harassment". *Id.* at 644.  The deliberate indifference must, at a minimum, "'cause [students] to undergo' harassment or 'make them liable or vulnerable' to it." *Id.* at 645.

38.     These factors limit school district liability under Title IX, in that a school district "may be liable for their deliberate indifference to **known acts of peer sexual harassment** . . . only where the recipient's response to the harassment or lack thereof is clearly unreasonable in

light of known circumstances." *Id.* at 648 (emphasis added). To avoid liability, a school district "must merely respond to known peer harassment in a manner that is not clearly unreasonable". *Id.* at 649. Plaintiffs do not allege CISD knew of any real or alleged sexual harassment of B.D.S. Plaintiffs' own pleadings do illustrate that any response was appropriate, in that (1) Principal Jeffers investigated the matter and concluded no touching took place (SAC at ¶ 77), (2) CISD's Title IX investigator investigated and "found no conclusive evidence that sexual misconduct or sexual harassment took place at school" (SAC at ¶ 80), and (3) this matter was discussed by Plaintiffs and Principal Jeffers on more than one occasion (SAC at ¶¶ 77-81). The CISD response once they were informed of Plaintiffs' concerns was extensive and proper. Importantly, no abuse took place after CISD management became aware of Plaintiffs' concerns. Regardless, CISD never had knowledge of any peer sexual harassment. *Id.*

39.     Next, the Supreme Court in *Davis* notes that a school district will be "held liable in damages only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive victims of access to the educational opportunities or benefits provided by the school." *Id.* at 650. Plaintiffs do not allege that the conduct was severe, pervasive <u>and</u> objectively offensive in their pleadings. Further, they do not allege that B.D.S. was deprived of any educational opportunity or benefit.

### *Claims Against Hysinger and Jeffers – Official Immunity*[7]

40.     Hysinger and Jeffers are sued in their individual capacities. As such, they are entitled to avail themselves of the defense of qualified immunity. They are entitled to a detailed,

---

[7] Plaintiffs set forth only "state-created danger" and "family integrity" claims against Hysinger and Jeffers. Defendants Hysinger and Jeffers incorporate ¶¶ 20-25 and 46 herein to show that the Fifth Circuit has not recognized the constitutional theories of "state-created danger" and "family integrity" under the factual scenarios laid out by Plaintiffs in their SAC.

written, specific pleading or statement, setting forth the basis of the Plaintiff's allegations and the facts which Plaintiff's claim would deprive each of them of qualified immunity. *See Schultea v. Wood*, 47 F.3d 1427, 1433-34 (5th Cir. 1995); *Crawford-El v. Britton*, 523 U.S. 574, 598-99 (1998); *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996); *Veney v. Hogan*, 70 F.3d 917, 922 n. 6 (6th Cir. 1995). Failure to plead any facts from which a determination of qualified immunity can be made leaves the Plaintiffs without a viable cause of action. *Id.* Plaintiffs have failed to meet this standard.

41. When determining whether a constitutional right is clearly established, the Fifth Circuit looks at whether the right was clearly established at the time of the contact, which for this matter is the time period of 2006-2009. *See Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 417 (5th Cir. 2009). Such a right is clearly established when "the contours of the right [are] sufficiently clear [so] that a reasonable official would understand that what he is doing violates that right." *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009) (quotations and citation omitted). The inquiry must then focus on whether the relevant officials were on notice that their conduct would violate clearly established law and that the state of the law provides fair warning that their conduct was unconstitutional. *See Hope v. Pelzer*, 536 U.S. 730, 740-41 (2002). "[D]efendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." *See Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001) (emphasis in original).

42. Plaintiff Tim Smith alleges a "state created danger theory" against the "District Defendants", apparently including claims against Hysinger and Jeffers in their individual capacities. (SAC at ¶ 126.) As set forth in this brief at 20-25 the "state-created danger" theory

has not been applied in the Fifth Circuit with "obvious clarity" to the specific conducts set forth in the SAC such that a reasonable Superintendent and/or Principal would be aware that his alleged actions were unlawful. *McClendon*, 305 F.3d at 322 (5th Cir. 2002). Because the "state-created danger" theory as a basis of liability was not clearly established at the time of the incidents alleged in Plaintiffs' SAC, Hysinger and Jeffers are entitled to qualified immunity. *See Pelzer*, 536 U.S. at 740-41.

43.     Plaintiff Tim Smith also makes a § 1983 claim against both Jeffers and Hysinger, alleging their "acts and omissions" "were specifically intended to undermine and interfere with Smith's right to family integrity." (SAC at ¶ 134.) Importantly, Plaintiff Tim Smith does not allege that any such "acts and omissions" actually interfered with his "right to family integrity." Absent asserting an element of injury or damages, Mr. Smith's claim fails as a matter of law.

44.     Even if this Court finds that Mr. Smith is entitled to pursue a claim for intentions that never came to pass, he has still not pled a claim for which relief can be granted. Mr. Smith's only factual complaints against Hysinger are that (1) the Superintendent showed up at an Admission, Review and Discharge ("ARD") meeting and his "presence was meant to intimidate Smith and chill his advocacy efforts" and (2) Hysinger degraded, berated and used profanity against Smith at a single meeting with the intention "to intimidate Smith and chill his advocacy efforts on behalf of his daughter." (SAC at ¶¶ 60, 61.) Again, Mr. Smith does not claim there was any intimidation to him or that his advocacy efforts were "chilled." There are no factual assertions related to any interference with Mr. Smith's family integrity.

45.     Mr. Smith's factual complaints against Jeffers are unrelated to any claim of interfering with Mr. Smith's family integrity:

a)    he instructed CISD employees to not touch B.D.S. (SAC at ¶ 46)

b)    he instructed CISD employees to not restrain B.D.S. (SAC at ¶ 47)

c)    he attended an ARD meeting (SAC at ¶ 60), where he read a prepared list of rules of conduct (SAC at ¶ 61)

d)    received a letter on September 22, 2008 requesting an explanation about an incident regarding an injured lip (SAC at ¶ 62), received an October 31, 2008 letter regarding Mr. Smith's daughter (SAC at ¶ 67), informed Mr. Smith of a restraint of B.D.S. (SAC at ¶ 77), received a January 28, 2009 letter regarding inadequate investigation (SAC at ¶ 78), received a February 5, 2009 email regarding B.D.S.'s educational placement (SAC at ¶ 79), and a request to investigate B.D.S.'s time on the school bus on March 2, 2009 (SAC at ¶ 82).

These are not allegations that would support recovery under the "state-crated danger" or "family integrity" theories.

46.    The Supreme Court has long recognized that the Fourteenth Amendment recognizes a "freedom of personal choice in matters of family life" worthy of protection under the substantive component of the due process clause. *Kiser v. Garrett*, 67 F.3d 1166, 1171 (5th Cir. 1995). Although Mr. Smith makes no direct assertion that Hysinger or Jeffers interfered with his custody or control of B.D.S., the Fifth Circuit has consistently "found no clearly-established right to family integrity when a state seeks to interfere temporarily with custody." *Id.*, *referencing Hodorowski v. Ray*, 844 F.2d 1210 (5th Cir. 1988) and *Doe v. Louisiana*, 2 F.3d 1412 (5th Cir. 1993), cert. denied 510 U.S. 1164 (1994).

47.    A reasonable government official sitting in Hysinger's position, knowing only that he must not infringe upon "family integrity" could not possibly know that showing up to an ARD meeting and acting in a boorish manner would interfere with Mr. Smith's "family integrity." *See Kiser*, 67 F.3d at 1172. It would be a mistake to conclude Hysinger's presence and alleged conduct at an ARD would violate such a constitutional right. *See Id.* "[A]lthough a

substantive due process right to family integrity has been recognized, the contours of that right are not well-defined, and continue to be nebulous." *Id*. at 1173. Such right as it extends to attendance and behavior at an ARD was not clearly established at the time of the alleged conduct, and Hysinger is thus entitled to qualified immunity. *See Id.*

48.     A reasonable government official sitting in Jeffers' position, knowing only that he must not infringe upon "family integrity" could not possibly know that showing up to an ARD, instructing CISD employees to not touch nor restrain B.D.S., and receiving communication from the Smiths via letter, email and telephone would violate a constitutional right. *Id.* at 1172. "[A]lthough a substantive due process right to family integrity has been recognized, the contours of that right are not well-defined, and continue to be nebulous." *Id*. at 1173. Such right as it extends to attendance and behavior at an ARD, instructions to employees and communications with Plaintiffs were not clearly established at the time of the alleged conduct, and Jeffers is thus entitled to qualified immunity. *Id.*

49.     Plaintiffs make no other claims or allegations against Hysinger and Jeffers, and they are entitled to qualified immunity.

### *Official Capacity Claims Must be Dismissed*

50.     Next, Plaintiffs' claims against Hysinger and Hardin in their official capacity must be dismissed as duplicative of claims against CISD. It has long been established by Supreme Court precedent that a suit against a government official in his official capacity is the same as a suit against the entity which he represents. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

*Statute of Limitations*

51.     Assuming, *arguendo*, that Plaintiffs were not required to exhaust administrative remedies under the IDEA for all of their claims, Plaintiffs' claims in their SAC are defeated by both the one year statute of limitations under the IDEA and the two year statute of limitations under the Rehabilitation Act, the ADA, § 1983 and Title IX.

52.     Plaintiffs failed to state a claim for which relief may be granted because they failed to meet the statute of limitations for the non-contract claims contained in their SAC. There is no federal statute of limitations period prescribed for civil rights violations brought under § 1983, the Rehabilitation Act, the ADA or Title IX and Federal Courts instead look to the applicable state law period for personal injury torts.   *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 123 n. 5 (2005); *Holmes v. Tex. A&M Univ.*, 145 F.3d 681, 683 (5th Cir. 1998); *Hickey v. Irving Indep. Sch. Dist.*, 976 F.2d 980, 982 (5th Cir. 1992).   Accordingly, the applicable statute of limitations period for a § 1983 suit in Texas is the same two year limitations period for personal injury claims provided in § 16.003(a) of the TEX. CIV. PRAC. & REM. CODE ANN.

53.     A cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.  *See Lavellee v. Listi*, 611 F.2d 1129, 1131 (5th Cir. 1980). The limitations period therefore begins to run when "the plaintiff is in possession of the critical facts that he has been hurt and who has inflicted the injury . . . ."  *Id.*   Under Texas's two-year statute of limitations, Plaintiffs suit filed on behalf of B.D.S. on December 7, 2010 and on behalf of Mr. Smith on March 28, 2011 were untimely.   Plaintiffs had reason to know of retaliation against Plaintiffs in 2007 (SAC ¶¶ 45, 46, 47, 48, 60, 61 and 67), sexual harassment/assault in

February 2008 (SAC ¶¶ 54, 55) and the use of restraints in 2008 (SAC ¶ 56). All such alleged conduct occurred at least two years prior to filing suit, and must be dismissed.

54.     The statute of the limitations relative to claims which must be addressed to the IDEA is even more restrictive.[8]   "A parent or public education agency must request a due process hearing within one year of the date the complainant knew or should have known about the alleged action that serves the basis for the hearing request."   19 TEX. ADMIN. CODE § 89.1151(c) (2007).  Because Plaintiffs knew of the basis of their complaints, and were required to exhaust their administrative remedies, the statute of limitations expired prior to Plaintiffs filing suit.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Defendants pray that their Amended Motion to Dismiss be granted along with all costs of court, including attorneys' fees, and for such other and further relief, by it equitable or legal, to which Defendants may be justly entitled.

Respectfully submitted,

UNDERWOOD, WILSON, BERRY,
STEIN & JOHNSON, P. C.
Slater C. Elza, State Bar No. 24000747
Andrea Slater Gulley, State Bar No. 24045994
P. O. Box 9158
Amarillo, Texas 79105
(806) 376-5613
FAX (806) 379-0316

By: /s/ Slater C. Elza
    Slater C. Elza

ATTORNEYS FOR DEFENDANTS

---

[8] As set forth in the 12(b)(1) portion of this Brief, all of Plaintiffs claims are in fact subject to the IDEA, and thus the one year statute of limitations adopted by Texas under the IDEA applies.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 19th day of April, 2011, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the electronic filing system of the Court. The electronic case filing system will send a "Notice of Electronic Filing" to the following attorney of record who has consented in writing to accept this Notice as service of this document by electronic means:

> Mr. Martin J. Cirkiel
> Cirkiel & Associates, P.C.
> 1901 E. Palm Valley Boulevard
> Round Rock, Texas 78664

/s/ Slater C. Elza
Slater C. Elza
